MARGARET R. RILEY, *Admrx., Etc.*

*v.*

WEST VIRGINIA NORTHERN RAILROAD COMPANY

(No. 10045)

Submitted September 14, 1948. Decided

December 14, 1948.

*Parrack, Snyder & Wehner, F. E. Parrack* and *Charles V. Wehner,* for plaintiff in error.

*Milford L. Gibson* and *Jacob S. Hyer,* for defendant in error.

FOX, JUDGE:

The West Virginia Northern Railroad Company, a corporation, complains of a judgment of $7,500.00, rendered against it in the Circuit Court of Preston County, on the fifth day of August, 1947, in a law action, in which

Margaret R. Riley, administratrix of the estate of Henry C. Riley, was plaintiff, and said railroad company defendant. The judgment complained of was entered on the verdict of a jury, and after a motion to set it aside had been made and overruled. An exception to the action of the trial court was taken to each of the rulings aforesaid; and on application of the defendant below we granted this writ of error. The parties will be referred to as they stood in the trial court.

The line of West Virginia Northern Railroad Company is located entirely within this State, and extends from Kingwood to Tunnelton in Preston County. It connects with one of the main lines of the Baltimore and Ohio Railroad at Tunnelton. At the time of the death of plaintiff's decedent, seventeen coal mines were located and in operation along the lines of the defendant, with sidetracks or spurs, connected by switches with its main track, and leading to such coal operations. The production from said mines was carried over defendant's line and delivered to the Baltimore and Ohio Railroad Company at Tunnelton, where the great volume thereof entered interstate commerce. On the other hand, some of such coal production and other freight was carried to points within this State, and constituted intrastate commerce.

Plaintiff's decedent, Henry C. Riley, was employed by the defendant railroad company as a boss trackman or road foreman. On the date of his death, January 14, 1946, said Riley was directed by the General Superintendent of said company to repair a switch leading to a coal mine and tipple operated by the Blake Coal Company. The declaration charges that:

> "That the decedent, H. C. Riley, and his fellow-workers, labored on said switch leading to said Blake Coal Company's side track from about 8 o'clock a.m., on the morning of January 14, 1946, until about 4 o'clock p.m. of that day; that said decedent, Henry C. Riley, and his fel-

low employees, were visited at least twice during said day by one J. D. Everly, the General Superintendent and agent of the said defendant, and were ordered by said general superintendent to work at said switch until at least 4 o'clock p.m. of said day, and that the said decedent, Henry C. Riley, and his fellow employees were advised by said Everly, General Superintendent and agent, as aforesaid, that said main line of defendant's railroad would be kept open *obstructed* awaiting the return of said decedent, Henry C. Riley, and his fellow employees from said Blake Coal Company switch over said main tracks of the said defendant to the shops of the defendant and the homes of the decedent, Henry C. Riley, and his fellow employees at Kingwood." (Italics ours.)

The declaration also avers that it was the duty of the defendant railroad company to furnish to plaintiff's decedent and his fellow employees a safe motor car light enough in weight to be removed from the tracks of the defendant railroad company by hand power; that it was its duty to equip said single track line of the railroad with a proper and efficient signal system; and that it was its duty to employ what is commonly known as a train dispatcher.

The declaration was filed at May Rules, 1946. There was a demurrer thereto in which seven grounds therefor were assigned: (1) That the declaration failed to show that at the date of the injury of plaintiff's decedent he was engaged in work in interstate commerce, or in furtherance thereof; (2) that the declaration did not negative compliance by defendant with the Workmen's Compensation Law of West Virginia; (3) that said declaration did not aver facts showing any legal duty on the part of defendant to use a motor car or truck light enough to be removed from the track by hand power; (4) that the declaration did not show any legal obligation on the part of the defendant to equip its line with a signal system; (5) that said declaration did not show a legal duty or obligation on the part of defendant to employ

a train dispatcher; (6) that the declaration did not show that the injury or death of the decedent was caused by the weight or character of the motor car and the truck attached thereto, nor that the injury or death of the decedent was caused by the failure of the defendant to maintain a signal system, or to employ a train dispatcher; and, (7) that the declaration did not show any right of recovery by the plaintiff under the Federal Employers' Liability Act.

Prior to filing of the demurrer aforesaid, the defendant had moved to strike from the declaration that part thereof which refers to the weight and size of the motor car or truck on which plaintiff's decedent was riding at the time of his death; that part which alleged the duty on the part of the railroad company to furnish its employees with motor or car light enough in weight to be removed from the track by hand power; and that part thereof which alleged that it was the duty of the railroad company to provide a train dispatcher, and a signal system.

At the date of the filing of its demurrer, aforesaid, the defendant also filed its plea number 1, being the general issue plea; and plea number 2, to the effect that the defendant, at the date of the death of the plaintiff's decedent, was engaged in both intrastate and interstate commerce, and that plaintiff's decedent was at the time engaged in work in intrastate commerce; and plea number 3, to the effect that on the date of the death of plaintiff's decedent, the defendant was a subscriber to the Workmen's Compensation Fund of the State of West Virginia, and that the plaintiff, Margaret R. Riley, widow of the said decedent, filed with the State Compensation Department her claim for benefits thereunder, and was awarded compensation in the sum of $30.00 per month to be paid to her from said Compensation Fund for life, or until her remarriage, which award she accepted. The plaintiff interposed her demurrers to said pleas numbers 2 and 3 which demurrers were later, on August 5, 1946,

sustained, and on said date the motion to strike, and the demurrer to the declaration were each overruled.

At this point the case was certified to this Court, on the pleadings and the trial court's orders in respect thereto. We refused to docket the case, and the same was remanded to the Circuit Court of Preston County. On June 14, 1947, the defendant filed its plea number 4, setting up, in substance, the same matters as those contained in its plea number 3, both relating to payment of compensation to the plaintiff, as widow of Henry C. Riley, to which plea number 4 plaintiff interposed her demurrer. The case was called for trial on July 8, 1947. After the jury was empannelled to try the case, an order was entered sustaining the demurrer to plea number 4 aforesaid, the court purporting to enter such order as of June 14, 1947, when the demurrer was filed. This action of the court constituted a mere irregularity, and is not shown to have prejudiced either party to the action.

The trial resulted in a verdict for plaintiff as heretofore stated, and the judgment under attack was entered. As we view the case, three important questions are involved: (1) Whether, at the date of death of plaintiff's decedent, he was employed in work in interstate commerce, or in work in furtherance thereof; (2) whether the defendant was guilty of negligence such as would entitle plaintiff to recovery under the provisions of the Federal Employers' Liability Act; and (3) whether acceptance of compensation from the State Workmen's Compensation Fund estops plaintiff from maintaining this suit. These questions will be considered in the order stated.

We think it clear that the plaintiff's decedent was, at the date of his death, employed in interstate commerce. The defendant railroad company was engaged in both intrastate and interstate commerce at that time, but the bulk of the traffic over its lines was delivered to the Baltimore and Ohio Railroad Company, an interstate car-

rier, and passed into interstate commerce. It seems quite clear that the repair of tracks, bridges, switches, etc., used in interstate commerce constitutes employment of that character. In *Pedersen v. Railroad Company*, 229 U. S. 146, it was held:

> "One engaged in the work of maintaining tracks, bridges, engines or cars in proper condition after they have become and during their use as instrumentalities of interstate commerce, is engaged in interstate commerce, and this even if those instrumentalities are used in both interstate and intrastate commerce."

In 35 Am. Jur. 865, it is stated:

> "The cases are uniform in holding that the employees engaged in building a railroad, although intended for the passage of interstate traffic, are not within the provisions of the Federal Employers' Liability Act. On the other hand, while there are some decisions to the contrary, the rule is now authoritatively settled that the work of repairing and maintaining the roadbed, track, bridges, trestles, etc., after they have been put in use, for the transportation of interstate trains, constitutes an employment in interstate commerce within the contemplation of the Federal Statute. This was established by a ruling of the Supreme Court that the requisite employment in interstate commerce exists where an employee of an interstate railroad carrier is killed while carrying a sack of bolts or rivets to be used in repairing a bridge which is regularly in use in both interstate and intrastate commerce. The fact that a track or bridge is used in both intrastate and interstate commerce does not prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce. The same principle applies to the work of keeping tracks clear of obstructions so that interstate traffic will not be hindered."

In this case, the declaration alleges, and the proof shows, that plaintiff's decedent was directed by his superior

to remove a used and worn switch, owned by the defendant, connecting its main single track line of railroad with a sidetrack leading to a coal operation of the Blake Coal Company, and to replace said used and worn switch with a newer and less worn switch. It was this character of work in which said decedent was engaged up until about 4 o'clock p.m., on the day of his death. We do not think it necessary to comment further on this point of the case, except to say that the Federal Employers' Liability Act, U.S.C.A., Title 45, Section 51, provides that common carriers engaged in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, and for injury or death resulting in whole or part from the negligence of officers, agents or employees of such carrier. An amendment to this act, enacted by the Congress in 1939, provides that:

> "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Chapter."

Certainly the plaintiff's decedent was engaged in work which was in furtherance of, and which closely affected interstate commerce, because the repair of the switch on which he was working was apparently deemed necessary to keep the track in condition for the passage of locomotives and trains used in interstate commerce. Plaintiff's decedent did not lose his life while so employed, but while returning from his place of labor to his home; and, of course, his employment did not end until he left the property of the company, at its terminus in Kingwood, the location of his home. We have dealt with this question at length in the case of *Pritt v. West Virginia Northern Railroad Company,* which decision has been

this day rendered, and our reference to that decision makes it unnecessary for us to comment further on this feature of the case.

On the second point, that of the alleged negligence of defendant railroad company, there is little if any dispute in the testimony. Plaintiff's decedent, and those assisting him, were directed to repair a switch. The superintendent of the railroad, one Everly, according to the testimony of several witnesses, and his own, visited the place where plaintiff's decedent, and his helpers were working on the switch, on one or more occasions, on the day of decedent's death, and instructed those there employed to work until around 4 o'clock in the afternoon, and stated that the railroad line would be kept open until they reached Kingwood, it being understood that they would travel to their homes by motor car and over defendant's railroad. It appears that Everly attempted to comply with his representation, but the message he sent the locomotive engineer, by word of mouth, was not delivered, with the result that a locomotive was operated over the line from Kingwood in the direction of Tunnelton, and met the motor car in which said workmen were travelling, and a collision occurred, resulting in the death of plaintiff's decedent. On his way from his working place to Kingwood, plaintiffs' decedent stopped at a station called Howesville, presumably in order to guard against any danger in meeting a train and was, apparently, reassured on that point. It seems to be a clear case of the railroad company's failure to take the necessary precautions against a known danger; its superintendent knew that plaintiff's decedent, along with his fellow employees, expected to use the defendant's railroad track after they ceased work around 4 o'clock in the afternoon of that day, and that they would be attempting to reach Kingwood, by the use of a motor car, and over its tracks. It was his duty to see that no locomotive passed over the line until Riley and his fellow employees had reached their destination. The testimony presents a clear case

of negligence, which entirely justifies the verdict of the jury on that point.

The third point involves the admitted action of the widow of Henry C. Riley, and the plaintiff in this action, in applying to the Workmen's Compensation Fund of the State of West Virginia for benefits on account of the death of her husband, and her action in accepting such benefits. It is unnecessary for us to deal at length with this question. In the case of *Pritt v. West Virginia Northern Railroad Company,* decided this day, that identical question was presented, and we there held:

> "An award of compensation by the State Compensation Commissioner, under the compensation laws of this State, on account of injuries sustained by a person employed in interstate commerce, as defined by the provisions of the Federal Employers' Liability Act, is void, and does not bar an action, under said act, against the employer, by the person so paid compensation under such void allowance thereof."

In that case an injured employee sought and accepted compensation. In this case the widow of a deceased employee sought and accepted such compensation. There is no other distinction between the two cases. The view taken in the *Pritt* case, which we reaffirm, and apply to this case, is that where one is injured, fatally or otherwise, while employed in interstate commerce, the Workmen's Compensation Commissioner has no authority to award compensation, his action in doing it is void, and does not operate, in any way, to estop the injured servant, or in case of death his personal representative from asserting a claim under the Federal Employers' Liability Act.

As stated above, defendant's motion to strike from the declaration matters referring to weight of the motor car, on which plaintiff's decedent was riding on the date of his death, was overruled. But on the trial of the case

there was read to the jury defendant's instructions numbers 6 and 7, by which the jury was instructed to disregard the evidence, and allegations in the declaration, as to the weight of the defendant's motor car or vehicle; and all allegations and proof to the effect that the small truck involved in the action complained of could not be removed from the track by man power until the tools and equipment therein had been removed. The court refused to give instructions with reference to the allegations of the declaration respecting the alleged failure to employ a train dispatcher, or to install a signal system; and also refused instruction number 5 which would have told the jury that, in determining the amount of its verdict, they should take into consideration amounts theretofore received by the plaintiff from the West Virginia Workmen's Compensation Fund; and also refused instruction number 10 with reference to the retirement pay to which Henry C. Riley would have been entitled had, he reached the age of sixty-five years, and retired from the service of the defendant.

There was no error in refusing to give these instructions. Defendant's instruction number 5 was presented on the theory that the allowance of compensation to the plaintiff should be considered. As we have stated, we do not treat that as an element in this case. We do not think that the fact that the decedent might have been entitled to retirement pay, had he survived and reached the age of sixty-five years, made defendant's instruction number 10 proper. Instructions numbers 8 and 9, offered by the defendant, with reference to a train dispatcher and signal system, can not be considered as having any appreciable effect on the result of the trial of this case, and the refusal thereof, if error, was not prejudicial. Here it appears that the plaintiff's decedent lost his life through the failure of the defendant to do a particular thing, namely, keep its track clear, on the day of the accident here involved, so that its employees could travel over the same in safety when returning from their work, as it had been promised would be done. Such result

might have been obtained for all occasions by the use of a train dispatcher, or by the operation of a signal system, or by some other method, such as was apparently attempted to be followed by the defendant's general superintendent on the day in question. We can not say it was improper to allege and prove that none of these methods had been employed. The evidence clearly shows that what actually caused this unfortunate accident was the failure of one employee to carry word to the engineer in charge of the locomotive which was involved in the collision from which the death of Henry C. Riley resulted; but we do not think it was reversible error to show that other methods might have been employed to prevent the same, because that simple fact, in view of all the circumstances, could not, in reason, have affected the jury on the sole question presented to them.

The judgment of the Circuit Court of Preston County is affirmed.

*Affirmed.*