RAY CROOKHAM

*v.*

THE NEW YORK CENTRAL RAILROAD COMPANY

(No. 10943)

Submitted January 27, 1959.    Decided March 10, 1959.

*Kay, Casto & Chaney, Robert H. C. Kay, John E. Davis,* for plaintiff in error.

*E. Franklin Pauley, J. G. F. Johnson,* for defendant in error.

GIVEN, PRESIDENT:

This action was instituted under the Federal Employers' Liability Act, in the Circuit Court of Mason County, by Ray Crookham, against the New York Central Railroad Company, an interstate common carrier, for damages alleged to have resulted from negligence of defendant in failing to furnish plaintiff with a reasonably safe place to work, in failing to furnish proper tools to perform work assigned to him, and in failing to furnish a sufficient number of employees to perform the work

assigned. The jury returned a verdict of $12,500.00 in favor of plaintiff, and the trial court, after overruling the motion of defendant for a new trial, entered judgment for plaintiff in the amount of the verdict.

On December 28, 1955, plaintiff, about sixty two years of age, reported for work assigned to him by defendant, as a section hand. He had worked for defendant, or its predecessor, for about forty two years, performing the usual work of such an employee, except for a short period of time when serving as a foreman of the crew. On the morning of the twenty eighth, the crew to which plaintiff had been assigned was engaged in removing ties from an abandoned track of the railroad system of defendant, and in constructing or repairing a fence along the right of way, using some of the old ties from the abandoned track for fence posts. It was the practice of defendant, when such tracks were abandoned, to clear the right of way of all ties, and often some of the ties were delivered to individuals, without charge therefor. On the morning of the twenty eighth, the crew consisted of eight men, one of whom was foreman. Normally the crew consisted of eight men and a foreman. While engaged in the work indicated, shortly after 9:00 A. M., a Mr. Sayre drove his truck to where the crew was working and requested that he be given ties from the abandoned track. The foreman granted the request and Sayre then drove his truck to the place where the ties were to be loaded, a short distance from where the crew had been working. The foreman directed four of the crew, apparently without designating any particular member thereof, to help Sayre load the ties on the truck. Plaintiff, with three other members of the crew, then proceeded to the place where the truck was to be loaded, and, with the help of Sayre, loaded the ties on the truck. Two loads of ties were placed on the truck, each load consisting of about forty ties. The foreman gave no instructions as to the manner of loading the ties, or as to the use of any tools in connection with the loading. One of the four employees secured and took along a lining bar for use in loosening the ties from the bed of the abandoned track. The fore-

man remained with the three members of the crew who continued to build or repair the fence. Tie tongs, tools sometimes used in the lifting or moving of ties, were available at the place of work, but were not used by the employees in loading the Sayre truck. The four employees, including plaintiff, who loaded the Sayre truck were experienced in the manner of handling ties and in loading them on trucks, but apparently had not previously loaded ties on a truck bed of the height of the Sayre truck, four feet from the ground, the usual height of trucks loaded being about three feet. After the four employees lifted several ties onto the bed of the truck, one of the employees assisted Sayre in stacking the ties in proper position on the truck, while the other three employees, including plaintiff, continued to load the truck by lifting the ties with their hands onto the bed. No one suggested the use of tie tongs in connection with the loading, though the employees knew tie tongs were available, and no employee made any objection to the manner or method of such loading. The ties weighed from 141 pounds to 220 pounds each. Plaintiff, testifying as to the supposed injury to his eye, stated: "A. I started to lift a tie. I reached down got it. It was a heavy one, a real heavy tie; I lifted it up. It just felt like salt in my eye. It wasn't a sharp pain —just a kind of burning sensation. When Ed come around, we took some time. I took my gloves off and wiped my glasses. Q. Did you ask permission to do this? A. Mr. Sayre said, 'Ray, your eyes is awful red.' I said I felt pretty good though I wanted to wipe my eyes. Q. What, if anything, did you notice with reference to your vision after you felt the burning sensation? A. It was just like it was blurred, like scum on my eye. Q. Did that continue from the time you first noticed the misery in the afternoon until you got through loading? A. Yes, sir."

After completing the loading of the Sayre truck, plaintiff returned to the place where other members of the crew were building the fence and assisted in that work the remainder of the day. While helping with the fence work, plaintiff continued to have a burning sensation in

his eye, and, as he testified, "went back and sighted posts and when I had sighted something like *to* three or four, Mr. Hayes said the posts were leaning away over. Mr. Whittington, the boss, was standing over there and I said, 'Pete, come over and sight these posts.' He came. Q. Mr. Whittington, your foreman, was standing there and you asked him to sight them? A. Yes, sir. Q. Did you tell him that you couldn't see? A. Yes, sir. That is right." On reaching home in the evening, he was unable to read the paper, unable to "even line up the headlines of it". On the morning of the twenty ninth he returned to work, but told his foreman that he "couldn't see" and that his "eye was blacked out". He continued to work on the twenty ninth, "worked on the fence, stretched wire and stapled the posts", but his eye was "still blurred". He also worked through the thirtieth, but was told "to patrol the track", was "looking for any defects in the railroad track".

On Saturday, December 31, plaintiff consulted an optician, who advised him to see an eye specialist. On complete examination by the eye specialist it was found that plaintiff had suffered "a large detachment of the retina extending over the infero-temporal half of the retina" of the left eye. The vision of the right eye "was 20-20 with glasses". After an operation to correct the condition of the left eye, and after plaintiff had reached maximum recovery, the objective findings were: "The right eye remains perfectly normal, except for some minimum changes associated with aging. The left eye shows a complete re-attachment of the retina. It is back, I don't know the wall around it. There is some pigmentation, which is always a result of the electric needle. The center portion of the retina is healthy except for some fine scar in this vital point known as the macula. The vision is 20-200 minus."

It is the contention of plaintiff that the detachment of the retina of the left eye was of traumatic origin, occasioned by the lifting of the ties loaded onto the Sayre truck. The medical evidence conclusively shows that such

a detachment may be occasioned by trauma but that "The force of the traumatism is not necessarily one of a great degree, in fact injuries from such objects as soft balls, a bump to the back of the head, a sudden jar in missing a step, are as frequent an etiological factor as are the injuries from a fist, sticks, and elbows, from stones, a sharp edge of a door or the back of a chair * * * the separations may occur immediately, several days or weeks later, or even with a delay of several months. Further, in all traumatic separations one must not forget that while the trauma may be the real cause of the separation, some of these eyes may have been affected prior to the injury by undiagnosed forms of chorio-retinitis or irido-cyclitis." There appears to be no doubt that such a detachment may occur from "just average labor", or from "stepping from one step down to another". The physician who discovered the detachment, and operated on the eye of plaintiff, testifying in behalf of plaintiff, was asked and answered the following questions: "Q. You also know, do you not, doctor, that a person who is nearsighted and who has had a certain amount of deterioration due to age, could have a detached retina with a very slight amount of physical energy? A. I think that is true. Q. It wouldn't be necessary for him to be lifting any object, just average labor, that could do it? A. It could." He was also asked to give an opinion as to whether the lifting of the ties "could have been the inciting or producing cause of the detachment of the retina", and in answer stated: "Yes, I do believe the lifting of the cross-ties could have been the inciting cause." In answer to another question, the physician stated: "* * * I was left with the impression that this was some type of traumatic injury."

The other physician, an eye specialist, who testified on behalf of plaintiff, concluded: "And it is not beyond my belief that this could have been a factor. Not the main factor, but a secondary factor, which contributed to his retinal separation. The main factor, of course, would be the degenerated changes of old age, nearsightedness. Those two would be the main factors."

The plaintiff, prior to the injury, wore eye glasses, "had a minor degree of nearsightedness", and was affected by arteriosclerosis in "a normal amount for a man of his age", and "had noticed floaters before his left eye" three or four months before the injury.

The jury answered in the affirmative the following special interrogatory: "Should the section crew have used the tie tongs to load the ties on the Sayre truck?"

Pertinent provisions of the Federal Employers' Liability Act are: "Every common carrier by railroad * * * shall be liable in damages to any person suffering injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C., Section 51.

"In all actions * * * to recover damages for personal injuries * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *". 45 U.S.C., Section 53.

"In any action brought against any common carrier * * * such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *." 45 U.S.C., Section 54.

In *Moore, Admr'x.* v. *Chesapeake & Ohio Railway Co.*, 340 U. S. 573, 71 S. Ct. 428, 95 L. ed. 547, the plaintiff sought recovery of damages on the theory that the engineer of defendant was negligent in making a sudden unexpected stop without warning, causing decedent-brakeman to be thrown from a place of safety to his death. In affirming the action of the trial court and entering judgment for defendant notwithstanding the verdict for plaintiff, the Supreme Court said: "Hence, all the evi-

dence shows is that decedent fell before the train stopped. If one does not believe the engineer's testimony that he stopped after—indeed, because of—the fall, then there is no evidence as to when decedent fell. There would still be a failure of proof.

"To sustain petitioner, one would have to infer from no evidence at all that the train stopped where and when it did for no purpose at all, contrary to all good railroading practice, prior to the time decedent fell, and then infer that decedent fell because the train stopped. This would be speculation run riot. Speculation cannot supply the place of proof. *Galloway* v. *United States,* 319 U. S. 372, 395." See *Tennant, Admr'x.* v. *Peoria & Pekin Union Railway Co.,* 321 U. S. 29, 64 S. Ct. 409, 88 L. ed. 520; *Herdman* v. *Pennsylvania Railroad Co.,* 352 U. S. 518, 77 S. Ct. 455, 1 L. ed. 2d 508. In *Rogers* v. *Missouri Pacific Railroad Co.,* 352 U. S. 500, 77 S. Ct. 443, 1 L. ed. 2d 493, the Court said: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence. (Emphasis added.)" The language quoted leaves no doubt, in the usual case at least, as to when the question of negligence of an employer-defendant under the Act becomes a question for jury determination. Though negligence of

an employer constitutes only the "slightest" part in producing the injury, and though the proof establish that the injury may probably have resulted from causes other than negligence of the employer, the question remains one for jury determination if the "proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." The common law theory of proximate cause, like contributory negligence, and like the assumption of risk doctrine, is not to be applied in cases prosecuted under the Act in the manner of its application under the common law. The fact remains, however, as established by decisions of Federal Courts, indeed by the very wording of the Act, that to create liability thereunder actionable negligence must be established against the employer proceeded against. See *Pritt* v. *West Virginia Northern Railroad Co.*, 132 W. Va. 184, 51 S. E. 2d 105, certiorari denied, 336 U. S. 961, 69 S. Ct. 891, 93 L. ed. 1113; *Riley, Admx.* v. *West Virginia Northern Railroad Co.*, 132 W. Va. 208, 51 S. E. 2d 119, certiorari denied, 336 U. S. 961, 69 S. Ct. 891, 93 L. ed. 1113.

In *Tiller, Executor* v. *Atlantic Coast Line Railroad Co.*, 318 U. S. 54, 63 S. Ct. 444, 87 L. ed. 610, after stating the history and purpose of the Congress in enacting the Federal Employers' Liability Act, the Court said: "In this situation the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done. A fair generalization of the rule is given in the Senate Committee report on the 1939 amendment: 'In justice, the master ought to be held liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances.' Of course in any case the standard of care must be commensurate to the dangers of the business. *Hough* v. *Railway Co.*, 100

U.S. 213, 218; cf. *Northern Pacific R. Co.* v. *Herbert,* 116 U. S. 642, 652."

Plaintiff rests his case on allegations that defendant failed to furnish a safe place to work, that proper tools were not furnished, that a sufficient number of employees to safely perform the work were not assigned to the work, and that the employees assigned to the work were not properly supervised in the performance thereof.

The only contention of plaintiff as to the failure of defendant to furnish proper tools for the performance of the work relates to tie tongs. The proof is conclusive that tie tongs were available, within a few feet of the place where the crew commenced work on the morning of the twenty eighth and, though the crew knew of the availability of the tongs, none suggested their use in the loading of the Sayre truck. It appears to be definitely established that the use of the tongs would have necessitated more strenuous lifting, in the loading of the ties, for the reason that their use would have required the employees to raise the weight of the ties being loaded onto the truck much higher, perhaps as high as their heads, since the handles of the tongs were always considerably above the weight being lifted. The foreman testified to the effect that he did not direct the employees to use the tongs for the reason that the truck could be more safely and easily loaded by lifting the ties by hand. In that judgment all of the crew, all experienced in handling ties, appear to have concurred at the time, since no suggestion of a need for the use of the tongs was made. In such circumstances, the foreman can not be said to be negligent in having decided the best procedure to load the truck, simply because an injury occurred. We have not overlooked the answer of the jury given to the special interrogatory. At most, the interrogatory, as worded and answered, is inconclusive as to any negligence of defendant. It could as well mean that the plaintiff was negligent in not using the available tongs as to imply negligence on the part of defendant in not compelling the use thereof. Moreover, the finding or answer to such a

special interrogatory can not be allowed to control where it is not supported by proof. See 19 M. J., Verdict, Sections 23, 24.

As to the contention of plaintiff that a sufficient number of employees was not assigned to the work of loading the Sayre truck, no witness even suggests that more than four employees should have been assigned to the work, and the evidence is conclusive that four employees were assigned and assisted at every stage of the work. The real complaint appears to arise from the fact that one of the four employees, with the assent of the others, assisted Sayre in stacking the ties on the bed of the truck instead of assisting the other three employees in lifting the ties to the bed of the truck. That question, however, directs itself to the last contention of plaintiff, whether defendant should have directly supervised and controlled the four employees in the precise manner of loading the Sayre truck. We have concluded that defendant was not negligent in that respect.

Of a certainty, the four employees directed to assist Sayre in loading the truck were experienced in handling and loading ties. Two of them had previously served as foremen of the section hand crew. Plaintiff had performed the same type of work for about forty two years. The work regularly assigned to the crew, the fence work, was to continue and it was necessarily a matter for the judgment of the foreman as to whether he should remain with that part of the crew, or leave that work and direct the loading of the truck. We think there is nothing in the record to even indicate the slightest negligence in the decision made or the action taken by him.

Assuming, however, that negligence of defendant was prima facie established by plaintiff as to one or more of the matters complained of, we are still faced with the contention that no proof exists tending to establish that the injury complained of resulted from such negligence. There is no conflict in the medical evidence as to the fact that a detachment of the retina, such as that suffered by plaintiff, may result from "just average labor", or by

"persons stepping from one step down to the other"; and that the "separations may occur immediately, several days or weeks later, or even with a delay of several months." The only direct evidence which can be pointed to as tending to show that plaintiff's injury occurred because of, or was occasioned by, the loading of the Sayre truck, is his own statement that "It just felt like salt in my eye. It wasn't a sharp pain—just a kind of burning sensation." This, however, can hardly be evidence tending to show that the detachment occurred or was occurring at the precise time he was loading the truck, in view of the following undisputed medical evidence: "Q. On detachment of the retina there is no pain? A. No. It can't happen. Pain-wise you just don't know you got it."

As we view the entire evidence, there is not the slightest proof that the injury occurred because of any extra or more strenuous work than that of "just average labor", or, in fact, from any work done by plaintiff in the loading of the Sayre truck. The cause of the detachment, if actually the result of trauma, may have occurred from work performed by plaintiff before the commencement of the loading of the Sayre truck, or, indeed, "several days or weeks" before that time, or while performing work subsequent to such loading, before the discovery of the detachment three or four days later. To permit a jury to say which is to permit it to "speculate". See *Herdman* v. *Pennsylvania Railroad Co., supra; Jenkins* v. *Kurn, et al., Trustees,* 313 U. S. 256, 61 S. Ct., 934, 85 L. ed. 1316; *Wilkerson* v. *McCarthy, et al., Trustees,* 336 U. S. 53, 69 S. Ct. 413, 93 L. ed. 497.

Numerous objections to the action of the trial court in giving or refusing instructions are made points of error by defendant. Though the view the Court takes as to the nonexistence of any proof of negligence on the part of defendant renders unnecessary a full discussion of such objections, it may be helpful, in the event of a new trial, to indicate the view of the Court as to the principal objections. Plaintiff's Instruction No. 2 reads: "The Court instructs the jury that if you shall believe from a

preponderance of the evidence in this case that the plaintiff was injured in performing the duties of the job for which he was employed by the New York Central Railroad Company, and that such injury was proximately caused by the defendant in failing to exercise ordinary care to furnish the plaintiff a reasonably safe place to work, and that said injury sustained by the plaintiff was proximately caused, in whole or in part, by the negligence of the defendant, then your verdict should be for the plaintiff, in such an amount as you think proper from the evidence, but not to exceed the amount of $27,552.00, the amount sued for."

Defendant contends that the instruction is binding and ignores any element of contributory negligence. The Court is of the view, however, that the instruction is not a binding one, and that it is in sufficient form; and that, assuming the existence of proof of primary negligence, the giving of the instruction would not constitute prejudicial error, since the jury was told in another instruction that "if you find that the plaintiff was guilty of negligence which contributed proximately to cause his injury and that the defendant was also guilty of negligence which contributed proximately with the negligence of the plaintiff to cause injury to the plaintiff, then it is your duty to diminish the amount which, in your opinion, under the evidence, you believe that the plaintiff herein will be entitled to recover by reason of the negligence of the defendant, by an amount in proportion to the amount of negligence attributed to the plaintiff." (The writer of this opinion is of the view, however, that the giving of such an instruction would constitute prejudicial error for the reason that it tells the jury that they may assess damages in the full amount of plaintiff's injury, notwithstanding there is in the case proof of contributory negligence of plaintiff, and notwithstanding the Federal Employers' Liability Act specifically requires that "the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee").

Other instructions complained of told the jury in effect

that under the proof they could find defendant guilty of negligence in not furnishing "sufficient help", or if it failed to "furnish a sufficient number of competent" employees to perform the work to be done, or failed to "furnish adequate and sufficient tools" to perform such work. The Court finds no substantial objection to the form or substance of such instructions, but, as pointed out, is of the view that no proof was offered justifying the reading of them to the jury.

The judgment of the Circuit Court of Mason County is reversed, the verdict of the jury is set aside, the defendant is granted a new trial, and the case is remanded to that court.

*Reversed;*
*verdict set aside;*
*new trial awarded;*
*remanded.*