The NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY et al., Defendants, Appellants,

v.

Edward A. CRAGAN, Plaintiff, Appellee.

No. 6511.

United States Court of Appeals First Circuit.

Heard Sept. 14, 1965.

Decided Nov. 17, 1965.

Noel W. Deering, Boston, Mass., for appellants.

Bernard Kaplan, Boston, Mass., with whom Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., was on brief, for appellee.

Before ALDRICH, Chief Judge, MADDEN, Judge of the Court of Claims,* and JULIAN, District Judge.

MADDEN, Judge.

The appellee-plaintiff Cragan sued the appellant-defendant railroad under the provisions of the Federal Employers' Liability Act (F.E.L.A.), 45 U.S.C. §§ 51–60. He alleged that, in performing his duties as a railroad police officer of the defendant railroad, he, as a result of the negligence of the railroad, suffered a physical injury. His case was tried before a jury in the United States District Court for the District of Massachusetts. At the close of the evidence the defendant moved for a directed verdict. The motion was denied. The jury returned a verdict for the plaintiff. The defendant made a motion for judgment notwithstanding the verdict. That motion was denied. In this appeal the errors asserted by the defendant are the denials of these motions.

■ The question confronting us is whether there is any substantial evidence that the railroad was negligent. The F. E.L.A. is not a workmen's compensation statute, imposing liability for injuries suffered by workmen in the course of their employment whether or not the employer is at fault. New York, N. H. and Hartford R. Co. v. Henagan, 364 U.S. 441, 81 S.Ct. 198, 5 L.Ed.2d 183. And if there is no evidence of negligence on the part of a defendant railroad, it is the duty of the trial judge to direct a verdict for the defendant. Id.

The plaintiff's injury which is involved in this suit occurred on March 31, 1961. The plaintiff had worked as a railroad police officer since 1938. On the night of his injury he was on his regular assignment on the midnight to 8 a. m. tour of duty in and about the Providence station of the railroad. He went to work at midnight and checked the situation at the station. Then he drove out in a railroad cruise automobile to check freight cars in the freight yard some two miles from the station. While in the freight yard he received a call, on his automobile telephone, from the stationmaster directing him to return to the station and meet a train from Boston which was due to arrive at 3 a. m. He returned to the station and boarded the train when it arrived. The conductor was having an altercation with a passenger about the showing of his pass. This controversy was resolved by conversation without the use of any physical exertion. The plaintiff left the train and started to walk through the station to re-enter the cruise car. In the station he heard a "drunk"

* Sitting by designation.

shouting. He asked the drunk to leave the station and, upon his refusal to do so, he took hold of the man's collar with his left hand and held his night-stick against the man's back with his right hand, and thus propelled the man to the station door. During this propulsion the plaintiff began to feel pains in the left side of his chest and in his left arm. At the door the man took a swing at the plaintiff and struck him on the chest. That made the plaintiff mad and he decided to arrest the man, but was unable to hold him because of weakness and pain. The plaintiff walked back into the station; other employees in the station could see that he was ill; one of them took him to a hospital. The hospital attributed his illness to heart trouble and gave him a supply of nitroglycerine tablets to take when the pains recurred. He then went to his home, was under the care of his own doctor, but a few days later suffered another severe attack and was taken to another hospital where he remained for several weeks. At that hospital electrocardiograms were taken and thorough examinations made. The hospital record reported "hypertensive cardiovascular disease and infarction of myocardium due to arteriosclerotic coronary thrombosis." Another report of an examining heart specialist stated:

> It is my opinion that this infarction could well have dated back to the time of the scuffle. It is my further opinion that Mr. Cragan had coronary artery disease, almost certainly of considerable duration, but that this episode of myocardial infarction was precipitated by the exertion of March 31.

The two medical reports were a part of plaintiff's evidence.

The record in this case shows that the plaintiff, a man fifty-two years old at the time of his misfortune in 1961, had been employed by the defendant railroad as a railroad policeman since the year 1938; that unknown to himself and to the railroad he had had, for a period "of considerable duration" before his misfortune, coronary artery disease; that on March 31, 1961, in performing one of the duties which he had been employed and paid for doing for twenty-three years, he suffered a heart attack and has, since that time, been disabled for any occupation involving strenuous physical activity.

As we have said early in this opinion, liability of a railroad under the F.E.L.A. requires that there be negligence on the part of the railroad. Restatement, Torts, 2d, defines negligence as:

> Conduct which falls below the standard established by law for the protection of others against unreasonable risks of harm.

There is no evidence of such conduct in this record. Much irrelevant evidence that, before 1954, when the railroad had a much larger volume of passenger and freight business than it had in 1961, it had more employees, including more railroad policemen, than it had in 1961, was admitted. But even that irrelevant evidence shows that if the incident involving the plaintiff had occurred before 1954, at 3:30 a. m. the policeman in the Providence station would have been alone, as the plaintiff was. The other policeman would have left the station and gone to the freight yard to check the seals on freight cars containing goods susceptible to theft. The reason why he would have left the station at 3 a. m. is because by that time the patrons of cafes and taverns which closed at 12 or one o'clock would no longer be dropping in at the station to use the toilet or the telephone.

In 1958 the railroad began to employ only one policeman on the 12 midnight to 8 a. m. shift, but it gave him a cruiser car with a telephone in it so that he could be called to the station if necessary, as the plaintiff was called on March 31. The fact that the plaintiff was alone in the station and there was not another policeman in the freight yard two miles away, on foot and without a telephone, as there would have been before 1958, is of no significance. A middle-aged policeman of 23 years' experience, as the plaintiff was, would not have regarded one drunk "hollering" in an otherwise empty

waiting room as creating a dangerous situation in which he should go or send for help.

The plaintiff suffered a heart attack while at work. There was no negligence on the part of the railroad. The defendant's motion for a directed verdict should have been granted.

The judgment for the plaintiff must be vacated and judgment ordered for the defendants.