498 S.E.2d 473

William R. GARDNER, Plaintiff
Below, Appellant,

v.

CSX TRANSPORTATION, INC., Third–
Party Plaintiff Below, Appellee,

v.

Jerry Henry BELCHER, Vernon and
Lana Anderson, Third–Party De-
fendants Below, Appellees.

No. 24002.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 16, 1997.

Decided Nov. 25, 1997.

492

John T. Papa, Callis, Papa, Jensen, Jackstadt & Halloran, PC, Granite City, IL, James Robinson, Robinson & Rice, LC, Huntington, for the Appellant.

Marc E. Williams, James W. Turner, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for the Appellee CSX Transportation, Inc.

Anthony J. Cicconi, Shaffer & Shaffer, Charleston, for the Appellees John Henry Belcher and Vernon and Lana Anderson.

McHUGH, Justice:

This case is before this Court on the appeal of William R. Gardner who, while employed by appellee CSX Transportation, Inc., sustained injuries when the locomotive in

which he was riding collided with a vehicle owned by appellees Vernon and Lana Anderson and driven by appellee Jerry Henry Belcher. The primary issues in this appeal are rooted in the fact that the appellant's cab seat lacked seatbelts and armrests and had an exposed metal hinge which allegedly contributed to his injury. By order filed June 17, 1996, appellant's post-trial motions were denied following summary judgment and directed verdict rulings in favor of CSX and a jury verdict in favor of the individual appellees, Jerry Henry Belcher and Vernon and Lana Anderson.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons discussed herein, the order of the Circuit Court of Logan County is affirmed.

## I

On or about March 26, 1991, appellant, while employed by CSX as a road brakeman and while working as a member of a relief crew, was riding in a locomotive cab seat traveling on railroad tracks from Latrobe to Peach Creek in Logan County. As the locomotive came upon a railroad crossing at Crown, appellant and other crew members observed a vehicle, driven by appellee Belcher, approach and then stall on the railroad tracks. Appellee Belcher eventually exited the vehicle, leaving it on the crossing. Though the locomotive hit the stalled vehicle, the locomotive's engineer, Joel McNeely, successfully prevented the locomotive from derailing. The appellant and other crew members exited the locomotive and rendered assistance as needed. Appellant subsequently developed back pain and was unable to work for seven and one-half months.[1]

Appellant instituted a lawsuit against CSX under the Federal Boiler Inspection Act, 45 U.S.C. § 23 (1988)[2] (hereinafter "FBIA"), and the Federal Employers' Liability Act, 45 U.S.C. § 51 (1939) (hereinafter "FELA"), alleging that CSX violated either or both of these statutes by failing to install armrests and seat belts on the cab seat in which appellant was riding and by failing to install a cab seat without a metal hinge.[3] Appellant asserted common law negligence claims against the individual appellees.

### *Summary judgment on FBIA claim*

Prior to trial, CSX made an oral motion for summary judgment on appellant's FBIA claims, which motion was granted.[4] The trial

---

1. CSX continued to pay appellant during this period pursuant to its voluntary wage continuation program.

2. 45 U.S.C. § 23 has been repealed and revised as 49 U.S.C. § 20701 (1994). The parties do not contend that such repeal and revision affect this case.

3. The FBIA is regarded as an amendment to the FELA, supplementing it "to provide additional public protection and facilitate employee recovery." *King v. Southern Pacific Transp. Co.*, 855 F.2d 1485, 1488 n. 1 (10th Cir.1988) (citing *Urie v. Thompson*, 337 U.S. 163, 188–92, 69 S.Ct. 1018, 1034–35, 93 L.Ed. 1282 (1949)). As will be discussed in more detail below, liability under FELA is predicated on a railroad's negligence, 45 U.S.C. § 51 (1939); *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 508–09, 77 S.Ct. 443, 449–50, 1 L.Ed.2d 493 (1957), whereas, under the FBIA, a carrier is absolutely liable "if it be shown that the locomotive was not in proper condition and safe to operate." *Guegan v. N.Y. Central Railroad Co.*, 243 F.2d 524, 526 (2d Cir.1957). *See* discussion, *infra*.

4. The record before this Court does not include a transcript of the pre-trial proceeding during which CSX's summary judgment motion was made and granted. In a subsequent proceeding, however, the trial court referred to its summary judgment ruling as follows:

> [CSX counsel]: You want to put on the record the previous rulings you made on the inspections?
> THE COURT: Basically, I overruled the motion for summary judgment that was filed [by the individual appellees] and that I did find the allegations of the violation of the Boiler Inspection Act having to do with the absence of seat belts, construction of the seat, required expert testimony since they weren't specific violations of this Boiler Inspection Act.
> [CSX counsel]: And arm rests also.
> [Appellant's counsel]: May I show on the record, please, that the plaintiff has taken the position that expert testimony is not required under the Boiler Inspection Act to show violation of the Act?
> THE COURT: Right. But I did also implicitly find there was nothing that could be specifically found to be a violation of the Boiler Inspection Act. I think your position is probably right, but I didn't find anything to show that there was.
> Subsequently, in the trial court's final order entered on December 20, 1995, the court re-

court denied, however, the individual appellees' motion for summary judgment.

### Trial on FELA claim and individual appellees' negligence

At trial on appellant's FELA claims against CSX and on his negligence claims against the individual appellees, CSX made a motion to exclude evidence of the cab seat's lack of armrests and seat belts after appellant's counsel made reference to these facts in his opening statement. CSX's argument was essentially two-fold: that the absence of seat belts and armrests is not evidence of negligence under FELA because there is no regulation requiring them and further, that appellant offered no expert witness to support his contention that the failure to install this equipment constituted negligence. The trial court granted CSX's motion and appellant made no offer of proof of the substance of the excluded evidence regarding the absence of seat belts and armrests. *See W. Va. R. Evid.* 103(a)(2).

The trial proceeded, as against CSX, on appellant's remaining claim that CSX violated FELA by failing to install a cab seat without a metal hinge. At trial, appellant testified that, prior to the locomotive's impact with the stalled vehicle, he braced himself in the cab seat by placing his feet in front of him on the cab door, his hands under the seat and his back against the seat's back support. According to appellant, upon impact, his body was thrust into the seat back, his back hitting a horizontal metal hinge which connected the back and seat of the chair.[5] Appellant introduced medical testimony that the impact of appellant's back with the metal hinge was a contributing factor to appellant's injury.

Appellant testified that the originating train crew reported to the relief crew no problems with any of the locomotive's equipment or with the cab seat. Likewise, prior to the collision, appellant noted no problems with either the locomotive's equipment or with the cab seat. Indeed, appellant testified that, prior to the accident, he had never complained about the safety of the cab seat and had known of no one else to complain about it. Finally, appellant testified that the cab seat in which he was riding did not break or malfunction when the locomotive collided with the stalled vehicle but in fact, according to appellant, the seat properly braced him during the accident.

The day following the collision, appellant completed an accident report, in accordance with railroad policy. In response to the question of whether any " 'defective tool or equipment use resulted in injury,' " appellant answered, " 'No.' "[6] Furthermore, in response to the question regarding whether anyone was at fault for the accident and injury, appellant answered, on the report,

counted its ruling, though referring to CSX's motion for summary judgment as a motion to dismiss. *See Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977) (motion to dismiss treated as motion for summary judgment when court considers matters outside pleadings). The court's order states, in pertinent part:

Prior to the commencement of trial, counsel for defendant, CSX Transportation, Inc., moved this Court to dismiss the plaintiff's claims brought pursuant to the Boiler Inspection Act, 45 U.S.C. § 23, on the grounds that, as pled, expert testimony was required to establish a prima facie case. Underpinning the plaintiff's Boiler Inspection Act claim were the following allegations: (1) that even in the absence of regulation requiring them, seat belts and armrests should have been installed in the locomotive cab seat on which the plaintiff claims injury, and (2) that although the cab seat did not break, malfunction or fail to satisfy any regulation, its condition as designed and installed violated the Boiler Inspection Act.

Counsel for defendant CSX Transportation, Inc. Moved this Court to dismiss those claims on the grounds that expert testimony was needed to establish a prima facie case and that no such experts were designated for use by the plaintiff. Counsel for plaintiff opposed the Motion but acknowledged to the Court that he would not call any expert witnesses in the case. After due consideration the Court granted defendant's motion and dismissed the Boiler Inspection Act claim on the grounds that expert testimony was necessary to establish a prima facie case in light of the allegations as framed by the plaintiff.

5. Unlike the cab seat in which appellant was riding, two other seats in appellant's locomotive did not have the exposed metal hinge.

6. At trial, appellant explained that he understood " 'defective tool or equipment' " "to mean was anything broken at the time."

" '[d]river of auto stalled on crossing, jumped out of car leaving it on crossing.' "

### Directed verdict on FELA claim

At the close of appellant's evidence, CSX and the individual appellees made separate motions for directed verdict. *See W.Va. R.Civ.P.* 50(a). CSX's primary argument in support of its motion was that the appellant failed to establish, *prima facie,* that CSX was negligent with regard to the existence of the metal hinge on the cab seat and further, that CSX could not reasonably foresee appellant's injury, as required under the FELA.

The trial court granted CSX's motion for directed verdict, finding,

as a matter of law, that the [appellant] has completely failed to make a prima facie case of negligence against CSX. Perhaps an expert witness might have made a difference, might have established negligence with respect to the seat. I'm not drawing any kind of conclusion on that since there was no expert testimony presented; there hasn't been.

The trial court denied the individual appellees' motion for directed verdict, however, and the trial proceeded exclusively on appellant's common law negligence claims against them. During trial, the individual appellees made a motion in limine to preclude the appellant from arguing or suggesting to the jury during closing arguments that appellee Belcher drove the vehicle onto the railroad tracks with the intention of abandoning it there as the locomotive approached, all in order to collect insurance proceeds. The trial court granted this motion, finding that appellant had no basis for making such an argument to the jury.

The jury ultimately rendered a verdict in favor of the individual appellees. The trial court entered a judgment order on or about December 20, 1995 and denied appellant's post-trial motions in an order entered June 17, 1996. It is from this latter order that appellant now appeals.

### II

### The Federal Boiler Inspection Act Claim

45 U.S.C. § 23 (1988), the Federal Boiler Inspection Act, provides, in relevant part:

It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb[.]

■ The FBIA "prohibits the operation of any locomotive that has not passed certain tests and inspections prescribed in the applicable rules and regulations." *Mosco v. Baltimore & Ohio R.R.,* 817 F.2d 1088, 1090 (4th Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987). *See King v. Southern Pacific Transp. Co.,* 855 F.2d 1485, 1488 (10th Cir.1988). Regulations concerning locomotive safety standards and inspections have been promulgated by the Federal Railroad Administration. *Mosco,* 817 F.2d at 1090. *See generally* 49 C.F.R. § 200, *et seq.*

■ Liability under the FBIA is not based on negligence. *Lilly v. Grand Trunk Western R. Co.,* 317 U.S. 481, 485, 63 S.Ct. 347, 351, 87 L.Ed. 411 (1943). Rather, under the FBIA, common carriers by railroad have "an absolute duty to maintain their locomotives in safe and proper condition." *Mosco,* 817 F.2d at 1090 (*citing Lilly,* 317 U.S. at 485, 63 S.Ct. at 350–51). *See McGinn v. Burlington Northern R. Co.,* 102 F.3d 295, 299 (7th Cir.1996). Thus, railroads that violate the FBIA "may be held liable to employees who are injured as a result of the violation." *Mosco,* 817 F.2d at 1090 (*citing Lilly,* 317 U.S. at 485, 63 S.Ct. at 350–51; *Green v. River Terminal Railway Co.,* 763 F.2d 805, 810 (6th Cir.1985)).

The FBIA is a remedial statute and, in order to effectuate its humanitarian purpose of "protect[ing] railroad workers against harm caused by defective railroad equipment[,]" *Garcia v. Burlington Northern R. Co.,* 818 F.2d 713, 715 (10th Cir.1987), courts have construed it liberally. *Id. See Lilly,* 317 U.S. at 486, 63 S.Ct. at 351; *King,* 855 F.2d at 1490.

It is appellant's contention that CSX violated the FBIA by failing to install seat belts

and armrests on its locomotive's cab seat and by failing to install a cab seat without a metal hinge.

In *Mosco, supra*, a railroad employee was injured when an object was thrown through the open window of the locomotive he was operating, striking him in the head. *Id.*, 817 F.2d at 1089. It was the employee's contention that the railroad should have installed screens, bars, grates or some other protective device on the window because it was often necessary to operate the locomotive with its windows open.[7] *Id.* at 1089–90.

In *Mosco*, the district court had granted the railroad's motion in limine to preclude evidence concerning the absence of screens, bars, grates or other protective devices from the locomotive's windows and to prevent the employee from arguing that the absence of these items violated the FBIA because the railroad had complied with the Federal Railroad Administration regulation requiring safety glazing of locomotive cab windows. *Id.* at 1090. Though the Fourth Circuit Court of Appeals affirmed the district court's in limine ruling, it expressly stated that even though a carrier complies with Federal Railroad Administration regulations, it may nevertheless violate the FBIA if it fails "to keep all the parts and appurtenances of their locomotives in proper condition and safe to operate without unnecessary peril to life or limb." *Id.* at 1091. *See* 45 U.S.C. § 23 (1988)

The *Mosco* court made clear, however, that liability under the FBIA may not be

imposed in every case in which it is alleged that a carrier's failure to install some device on a locomotive rendered the locomotive unsafe. The [FBIA] imposes on carriers only the duty to maintain the parts and appurtenances of their locomotives in safe and proper condition, and the term 'parts

and appurtenances' does not include every item of equipment that conceivably could be installed on a locomotive.

*Id.* Rather, quoting the United States Supreme Court decision in *Southern Ry. v. Lunsford*, 297 U.S. 398, 402, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936), the court in *Mosco* explained that

'[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission [now the Federal Railroad Administration], are within the [FBIA]. But mere experimental devices which do not increase the peril, but may prove helpful in an emergency, are not. These have not been excluded from the usual rules relative to liability.'

*Id.*, 817 F.2d at 1091. *See King*, 855 F.2d at 1488.

Thus, relying on *Lunsford, supra*, the court in *Mosco* held that "a carrier cannot be held liable under the [FBIA] for failure to install equipment on a locomotive unless the omitted equipment (1) is required by applicable federal regulations; or (2) constitutes an integral or essential part of a completed locomotive.[8]" *Mosco*, 817 F.2d at 1091. (footnote added). This principle was subsequently applied by the Tenth Circuit Court of Appeals in *King, supra*. *See Id.*, 855 F.2d at 1488–89. We likewise find this liability standard to be both logical and compelling.

 Accordingly, we hold that pursuant to the Federal Boiler Inspection Act, 45 U.S.C. § 23 (1988), it shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless, *inter alia*, that locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper con-

---

7. According to the employee in *Mosco*, he had reported to the railroad that, on several prior occasions, juveniles had thrown stones into the locomotive at the same tunnel where he was injured. *Id.* at 1090. He further testified that it was necessary that he open the window several inches in order to cool and ventilate the cab and then to further open the window to a width of eight inches in order to check his ground speed, as the window was so dirty he could not otherwise see out of it. *Id.* It was at that point that the object was thrown into the locomotive.

8. Screens bars, grates or other protective devices were not required to be installed by applicable federal regulations. *Id.* at 1091. Thus, under the above-quoted rule, the *Mosco* court found that the employee's FBIA claim would only be viable if the omitted protective devices were integral or essential parts of a completed locomotive. *Id.* The court concluded that they were not.

dition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb. Under the Federal Boiler Inspection Act, 45 U.S.C. § 23 (1988), a carrier cannot be held liable for failure to install equipment on a locomotive unless the omitted equipment is either required by applicable federal regulations or constitutes an integral or essential part of a completed locomotive.

■ In this case, there is no contention that the absence of seat belts and armrests and the absence of a cab seat without a metal hinge violated a Federal Railroad Administration regulation. *Mosco*, 817 F.2d at 1091. 49 C.F.R. § 229.119(a) (1996) requires that "[c]ab seats shall be securely mounted and braced[,]" *see King*, 855 F.2d at 1489, and it is undisputed that upon the locomotive's collision with the stalled vehicle, the cab seat properly braced him and did not malfunction or break. Thus, the condition of the cab seat did not violate any Federal Railroad Administration regulation.

The remaining inquiry then is whether the locomotive in which appellant was riding was "unsafe" under the FBIA because the omitted equipment—the seat belts, armrests and cab seat without a metal hinge—were integral or essential parts thereof. *See Mosco*, 817 F.2d at 1091. In other words, is CSX liable under the FBIA "for failing to *install additional* safety devices which the Secretary of Transportation has not seen fit to require"[?][9] *King*, 855 F.2d at 1489 (emphasis provided and footnote added).

As stated above, the circuit court granted CSX's motion for summary judgment on appellant's FBIA claim "on the grounds that expert testimony was necessary to establish a prima facie case in light of the allegations as framed by the [appellant]." *See* n. 4, *supra*. Though it is appellant's contention that the circuit court's ruling was in error because, according to appellant, expert testi-

mony is not required to establish an FBIA claim, we find that appellant failed to meet the more fundamental burden of proof imposed upon him at the summary judgment stage.

■ In syllabus points one, two and three of *Williams v. Precision Coil*, 194 W.Va. 52, 459 S.E.2d 329 (1995), this Court made the following pronouncements with regard to motions for summary judgment:

1. ' "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

2. Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

3. If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Appellant, as the party opposing summary judgment, was required to offer "more than a mere 'scintilla of evidence' and [to] produce

---

9. We note, as did the court in *King*, 855 F.2d at 1489, that courts have rejected "failure to install" claims. *See Id.* (citing *Mosco*, 817 F.2d at 1091–92; *Mahutga v. Minneapolis, St. P. & S.S.M. Ry.*, 182 Minn. 362, 234 N.W. 474, *cert. denied* 283 U.S. 847, 51 S.Ct. 494, 75 L.Ed. 1456 (1931)). In contrast, courts have deemed meri-

torious so-called "failure to maintain" claims. *King*, 855 F.2d at 1489. These claims occur when, for example, "a railroad has allowed a locomotive, or its parts or appurtenances to deteriorate so that the locomotive cannot be operated safely [.]" *Id.* at 1489 n. 3. *See Id.* (citing numerous "failure to maintain" cases).

evidence sufficient for a reasonable jury to find in [his] favor." *Williams*, 194 W.Va. at 60, 459 S.E.2d at 337 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986)). Appellant failed to meet this standard.

As we have already established, the absence of seatbelts and armrests and the absence of a cab seat without a metal hinge did not violate any Federal Railroad Administration regulation. Therefore, appellant's FBIA claim would only be viable if seat belts, armrests, and cab seats without metal hinges were integral or essential parts of the locomotive. *Mosco*, 817 F.2d at 1091. *See King*, 855 F.2d at 1488–89. Appellant contends merely that, based upon his testimony that the locomotive lacked cab seats with seat belts and armrests and a cab seat without a metal hinge, the jury should have been given the opportunity to determine whether an FBIA violation occurred. The fact that this equipment was omitted from the locomotive in which appellant was riding, without more, is not sufficient evidence for a reasonable jury to find that the equipment was an integral or essential part of the locomotive [10] and that, therefore, CSX violated the FBIA. Upon *de novo* review of the trial court's entry of summary judgment, *see* syl. pt. 4, *Dieter Engineering Services, Inc. v. Parkland Development, Inc.*, 199 W.Va. 48, 483 S.E.2d 48 (1996), we find no error in the trial court's ruling.

### III

### *The Federal Employers' Liability Act Claim*

Though a plaintiff may not have a viable FBIA claim, it is possible that he or she may have a meritorious FELA claim based on the same facts. *Mosco*, 817 F.2d at 1092. *See King*, 855 F.2d at 1488 n. 1 ("The FELA allows recovery in a broad range of situations, while liability under the [F]BIA only occurs under narrow circumstances. As a result, claims which cannot be maintained under the [F]BIA are often actionable under the FELA."). *See also Morgan v. Consolidated Rail Corp.*, 509 F.Supp. 281 (S.D.N.Y. 1980). Unlike the FBIA, liability under the FELA is premised on a railroad's negligence. *See Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156, 1158 (3d Cir.1992); *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir.1990); *Chapman v. Union Pacific R.R.*, 237 Neb. 617, 467 N.W.2d 388, 393 (1991). *See also King*, 855 F.2d at 1488 n. 1.

The FELA, 45 U.S.C. § 51 (1939), states, in relevant part:

> Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier [.]

The FELA is intended to be a broad, remedial statute, and like the FBIA, it has been construed liberally to effectuate its humanitarian purposes.[11] *Ackley v. Chicago and North Western Transp. Co.*, 820 F.2d 263, 266 (8th Cir.1987) (*citing Urie*, 337 U.S. at 180, 69 S.Ct. at 1029, 93 L.Ed. 1282). *See Rogers v. Consolidated Rail Corp.*, 948 F.2d 858, 862 (2d Cir.1991); *Green v. River Ter-*

---

10. Notably, in *King*, 855 F.2d at 1490, the court concluded that armrests, which were omitted from the cab chair on which an injured brakeman was riding, were not an integral or essential part of the locomotive even though the defendant railroad, in its agreement with the union, had agreed to equip its locomotives with armrests, and which, in fact, had been uniformly installed on the railroad's other locomotives. *Id.*

11. FELA's humanitarian purposes are also furthered by the abolition of

several common-law tort defenses that [prior to its enactment] had effectively barred recovery by injured workers. Specifically, [FELA] abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of that of comparative negligence, and prohibited employers from exempting themselves from FELA through contract; a 1939 amendment abolished the assumption of risk defense. *See* 45 U.S.C. §§ 51, 53–55.

*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542–43, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994).

*minal Ry. Co.,* 763 F.2d 805, 806 (6th Cir. 1985); *Lewy v. Southern Pacific Transp. Co.,* 799 F.2d 1281, 1288 (9th Cir.1986).

As indicated above, after the trial court granted CSX's motion for summary judgment on appellant's FBIA claim, the trial proceeded, as against CSX, on appellant's claim that it was negligent for CSX to fail to provide a cab seat without a metal hinge, in violation of the FELA.[12] The trial court ultimately granted CSX's motion for directed verdict on appellant's FELA claim, concluding, "as a matter of law, that the [appellant] has completely failed to make a prima facie case of negligence against CSX."

To prevail on a FELA claim, a plaintiff is required to " 'prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.' " *Adams,* 899 F.2d at 539 (*quoting Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987)). *See Richardson v. Missouri Pacific Railroad Co.,* 677 F.2d 663, 665 (8th Cir.1982). *See also Brown v. CSX Transportation, Inc.,* 18 F.3d 245, 249 (4th Cir.1994); syl. pt. 11, *Chapman, supra* ("To recover under the [FELA], an employee must prove the employer's negligence and that the alleged negligence is a proximate cause of the employee's injury.")

■ Under FELA, a railroad has a general duty to provide a safe workplace. *Peyton v. St. Louis Southwestern Ry. Co.,* 962 F.2d 832, 833 (8th Cir.1992). *See McGinn,* 102 F.3d at 300; *Brown,* 18 F.3d at 249. " '[T]he employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done.' " *Crookham v. New York Central Railroad Co.,* 144 W.Va. 196, 204, 107 S.E.2d 516, 521, *cert. denied,* 361 U.S. 821, 80 S.Ct. 65, 4 L.Ed.2d 66 (1959) (*quoting Tiller v. Atlantic Coast Line R. Co.,* 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610 (1943)). *See Peyton,*

962 F.2d at 833. A plaintiff must further demonstrate that the railroad or its agent could have reasonably foreseen that a particular condition could cause harm. *Richardson,* 677 F.2d at 665 (*citing Gallick v. Baltimore & O. R. Co.,* 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963); *Inman v. Baltimore & O. R. Co.,* 361 U.S. 138, 140, 80 S.Ct. 242, 243, 4 L.Ed.2d 198 (1959)). *See McGinn,* 102 F.3d at 300; *Adams,* 899 F.2d at 540 (" 'reasonable foreseeability of harm is an essential ingredient of [FELA] negligence[.]' " (*quoting Gallick,* 372 U.S. at 117, 83 S.Ct. at 665, 9 L.Ed.2d 618)).

The causation standard in FELA cases and the test for a trial court to determine a jury question was established in the landmark decision of *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506–07, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493 (1957), which has been consistently followed by various federal courts:

> Under [the FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.

(footnotes omitted). *See* 45 U.S.C. § 51 (1939) ("[e]very common carrier by railroad . . . shall be liable . . . for . . . injury or death resulting *in whole or in part,* from the negligence of . . . such carrier[.]" *Id.,* in part (emphasis added)); *Crookham,* 144 W.Va. at 203, 107 S.E.2d at 520; *O'Connell v. National R.R. Passenger Corp.,* 922 F.2d 1039, 1042 (2d Cir.1991); *McGinn,* 102 F.3d at 300; *Ackley,* 820 F.2d at 266. *See also Consoli-*

12. The trial court likewise granted CSX's motion to exclude evidence that the cab seat lacked armrests and seat belts. This ruling is the subject of appellant's final assignment of error against CSX which is discussed in note 14, *infra.*

dated *Rail Corp. v. Gottshall,* 512 U.S. 532, 543, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994); *Adams,* 899 F.2d at 539. Consistent with *Rogers supra,* this Court held in syllabus point 3 of *Crookham, supra,* that "[i]n an action prosecuted under the Federal Employers' Liability Act, to entitle plaintiff to recover the proof must justify with reason that the injury complained of resulted, in whole or in part, from negligence of defendant which contributed proximately to the cause of the injury." *See Id.,* at syl. pts. 1 and 2.

■ Though the standard of causation under FELA imposes liability on a railroad if its or its agent's negligence played any part, even the slightest, in producing the employees's injury, *McGinn,* 102 F.3d at 300 (*citing Rogers,* 352 U.S. at 506, 77 S.Ct. at 448), *"[t]he fact remains ... by the very wording of the [FELA], that to create liability thereunder actionable negligence must be established against the employer proceeded against."* *Crookham,* 144 W.Va. at 204, 107 S.E.2d at 520–21 (citations omitted and emphasis added). *See Richardson,* 677 F.2d at 665; *New York, New Haven and Hartford Railroad Co. v. Cragan,* 352 F.2d 463, 464 (1st Cir.1965), *cert. denied,* 386 U.S. 1035, 87 S.Ct. 1488, 18 L.Ed.2d 601 (1967); *Nivens v. St. Louis Southwestern Railway Co.,* 425 F.2d 114, 118 (5th Cir.), *cert. denied,* 400 U.S. 879, 91 S.Ct. 121, 27 L.Ed.2d 116 (1970) ("[e]mployer negligence is still mandatory for recovery under [FELA]."). Indeed,

> [t]hat FELA is to be liberally construed ... does not mean that it is a worker's compensation statute. [The United States Supreme Court] ha[s] insisted that FELA 'does not make the employer the insurer of the safety of his employees while they are on duty. *The basis of his liability is his negligence, not the fact that injuries occur.'*

(emphasis added). *Gottshall,* 512 U.S. at 543, 114 S.Ct. at 2404 (*quoting Ellis v. Union Pacific R. Co.,* 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572 (1947)). *See Inman,* 361 U.S. at 140, 80 S.Ct. at 243, 4 L.Ed.2d 198; *McGinn,* 102 F.3d at 300 (the "lenient standard for avoiding summary judgment under the FELA ... has its limits. The plaintiff must still present *some* evidence of

negligence." (emphasis provided)); *Beeber v. Norfolk Southern Corp.,* 754 F.Supp. 1364, 1368 (N.D.Ind.1990). Accordingly, we hold that to prevail on a claim under The Federal Employers' Liability Act, 45 U.S.C. § 51 (1939), a plaintiff employee must establish that the defendant employer acted negligently and that such negligence contributed proximately, in whole or in part, to plaintiff's injury.

As previously stated, the trial court granted CSX's motion for directed verdict on appellant's FELA claim because, as a matter of law, "the [appellant] has completely failed to make a prima facie case of negligence against CSX. Perhaps an expert witness might have made a difference, might have established negligence with respect to the seat. I am not drawing any kind of conclusion on that since there was no expert testimony presented; there hasn't been."

■ The standard for granting a motion for directed verdict was previously reiterated by this Court in syllabus points one and two of *Brannon v. Riffle,* 197 W.Va. 97, 475 S.E.2d 97 (1996):

> 1. 'When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right to recovery, the trial court should direct a verdict in favor of the defendant.' Syl. pt. 3, *Roberts ex rel. Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964).

> 2. ' " "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.,* 112 W.Va. 85 [, 163 S.E. 767 (1932) ].' " Point 1, Syllabus, *Jenkins v. Chatterton,* 143 W.Va. 250 [, 100 S.E.2d 808] (1957).' Syl. Pt. 1, *Jividen v. Legg,* 161 W.Va. 769, 245 S.E.2d 835 (1978).

■ We further established, in syllabus point 3 of *Brannon, supra,* that this Court reviews *de novo* the granting of a motion for directed verdict:

> The appellate standard of review for the granting of a motion for directed verdict

pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.

■ In this case, appellant argues that it was error for the trial court to grant CSX's motion for directed verdict on the FELA claim "as there was competent evidence submitted demonstrating that negligence of CSX 'in whole or in part' caused injury to appellant[.]" *See* 45 U.S.C. § 51 (1939). Thus, according to appellant, it was for the jury to "determine that the railroad's negligence, however small, caused an injury to a railroad employee even based entirely on circumstantial evidence." *See Rogers*, 352 U.S. at 507, 77 S.Ct. at 449.

13. We further note that appellant wholly failed to establish that CSX could have reasonably foreseen that the existence of the metal hinge, whether it was negligent for the hinge to exist in the first place, could cause harm. *Richardson*, 677 F.2d at 665. *See Adams*, 899 F.2d at 540 (" 'reasonable foreseeability of harm is an essential ingredient of [FELA] negligence.' ") To the contrary, appellant testified that neither he nor any other employee had observed or reported any problems with the cab seat prior to the collision. Appellant had not noticed the metal hinge before the collision and had thus, never complained to CSX about it. Finally, when the locomotive collided with the stalled vehicle, it did not break or malfunction, but properly braced and supported him.

14. Appellant's final assignment of error with regard to CSX is that the trial court committed error in excluding evidence that the cab seat lacked armrests and seat belts and was therefore defective.

As stated above, appellant's counsel, during his opening statement, indicated to the jury that the cab seat in which appellant was riding had no armrests or seat belts. CSX subsequently made a motion in limine to exclude any further reference to the absence of seat belts and armrests because appellant had no witness to testify that the absence of these items constituted negligence. The trial court granted CSX's motion.

As previously stated, at least some evidence of employer negligence is mandatory for recovery under FELA. *Nivens*, 425 F.2d at 118; *McGinn*, 102 F.3d at 300; *Crookham*, 144 W.Va. at 204, 107 S.E.2d at 520–21. Though appellant maintains that, viewing the evidence in the light most favorable to him, he established, *prima facie*, that the existence of the metal hinge on the cab seat *caused* his injury, either in whole or in part, appellant introduced no evidence that, in providing a cab seat with a metal hinge, CSX breached its duty of care to appellant and thus, acted negligently.[13] *Peyton*, 962 F.2d at 833. Therefore, upon *de novo* review of the trial court's granting of CSX's motion for directed verdict, this Court, after considering the evidence in the light most favorable to appellant, concludes that the trial court properly granted the motion.[14] Syl. pt. 3, *Brannon, supra.*

## IV

■ The final assignment of error, which concerns appellant's claims against the indi-

*W.Va.R.Evid.* 103(a)(2) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and … [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." In this case, when the court granted CSX's motion in limine to exclude evidence of the absence of seat belts and armrests, appellant made no offer of proof advising the trial court of the substance of the excluded evidence. As we stated in *State v. Blake*, 197 W.Va. 700, 708, 478 S.E.2d 550, 558 (1996), the reasons for requiring offers of proof under Rule 103(a)(2) are not only to "permit the trial judge to reevaluate his or her decision in light of the actual evidence to be offered," but also to "aid the reviewing court in deciding whether the alleged error was of such magnitude that it was prejudicial to the substantial rights" of the non-moving party. In that appellant failed to indicate, on the record, the substance of the evidence which was excluded below, this Court is unable to review whether the court's allegedly erroneous ruling was of such magnitude that it prejudiced appellant's substantial rights. *See Sullivan v. Rowan Companies, Inc.*, 952 F.2d 141, 147 (5th Cir.1992) (" '[i]n order to preserve their objections for appeal, [appellants] had a responsibility to make an offer of proof sufficient to allow intelligent review.' Their failure to do so precludes review[.]" (citations omitted)).

vidual appellees, is whether the trial court committed error in prohibiting appellant from arguing to the jury that the vehicle with which the locomotive collided did not stall on the railroad tracks but was intentionally driven onto the crossing by appellee Belcher and left there as the locomotive approached, all in order to collect a property damage insurance payment. As indicated above, the trial court found that appellant's argument had no basis in fact and, accordingly, granted the individual appellees' motion in limine to prohibit any such argument or inference by appellant's counsel during closing argument. We find no error in the trial court's ruling.

On appeal, appellant contends that the jury could have reasonably inferred that "the vehicle may have had more value demolished than operational. The tragic 'coincidence' that this vehicle happened to stall directly astraddle these railroad tracks at the precise moment a train was approaching is in and of itself cause to question the motive of appellee Belcher. Further, during cross-examination, Belcher volunteered that a property damage claim had been made and paid on the demolished vehicle."

 In syllabus point two of *Jenrett v. Smith*, 173 W.Va. 325, 315 S.E.2d 583 (1983), this Court held that " '[t]hough wide latitude is accorded counsel in arguments before a jury, such arguments may not be founded on facts not before the jury, or inferences which must arise from facts not before the jury.' Syl. pt. 3, *Crum v. Ward*, 146 W.Va. 421, 122 S.E.2d 18 (1961)." Any argument, in this case, that appellee Belcher drove the vehicle onto the railroad crossing and intentionally left it there to be hit by the approaching locomotive is not supported by any facts presented to the jury. Rather, appellant's allegations of insurance fraud were nothing more than speculation and conjecture and were properly excluded by the trial court. *See also* syl. pt. 3, *Adams v. Sparacio*, 156 W.Va. 678, 196 S.E.2d 647 (1973) (" 'A jury will not be permitted to base its findings of fact upon conjecture or speculation.' Point 1, Syllabus, *Oates v. Continental Insurance Co.*, 137 W.Va. 501 [72 S.E.2d 886] [ (1973) ].")

### V

For the reasons discussed in this opinion, the June 17, 1996 order of the Circuit Court of Logan County denying appellant's post-trial motions is affirmed.

Affirmed.