506 S.E.2d 624

**Connie DOLEN, Plaintiff below, Appellant,**

v.

**ST. MARY'S HOSPITAL OF HUNTING-TON, INC., a corporation; Ernest Tonski, M.D., d/b/a ER Physicians Group; Dennis Burton, M.D.; and Radiology, Inc., a corporation, Defendants below, Appellees.**

No. 24978.

Supreme Court of Appeals of West Virginia.

Submitted June 9, 1998.

Decided July 14, 1998.

Dissenting Opinion of Justice Maynard July 17, 1998.

Maynard, J., issued dissenting opinion in which McCuskey, J., joined.

---

Theodore Davitian, Parkersburg, West Virginia, N. Gerald DiCuccio, Gail M. Zalimeni, Columbus, Ohio, Attorneys for the Appellant.

Michael J. Farrell, Tamela J. White, Farrell, Farrell & Farrell, L.C., Huntington, West Virginia, Attorneys for Appellees St. Mary's Hospital and Ernest Tonski.

John D. Hoffman, Don R. Sensabaugh, Jr., Flaherty, Sensabaugh & Bonasso, Charleston, West Virginia, Attorneys for Appellees Dennis Burton and Radiology, Inc.

PER CURIAM:[1]

The plaintiff-appellant in this action appeals a July 3, 1997 order of the Circuit Court of Cabell County granting summary judgment to the defendant-appellees in a medical malpractice action. The plaintiff, who alleges that an emergency room doctor and a radiologist negligently treated her for a broken jaw, appeals the circuit court's ruling that an oral surgeon was not qualified to render an opinion in this case. We conclude that the circuit court erred in excluding the testimony of the oral surgeon. As discussed below, we reverse the circuit court's summary judgment order, and remand the case for further proceedings.

## I.

On June 12, 1995, plaintiff Connie Dolen fell off her front porch and injured her jaw. She was taken to the emergency room of defendant St. Mary's Hospital, where she was seen by one of the two defendants, emergency room doctor, Ernest Tonski. At that time the plaintiff complained of pain in her left temporomandibular joint and mid-right jaw and said that she believed her jaw was broken and misaligned.[2]

A "panorex" radiograph, an x-ray film of the plaintiff's jaw, was taken and read by the second defendant doctor, radiologist Dennis Burton. Dr. Burton found no acute fracture or dislocation on the panorex, and informed Dr. Tonski of his findings. Dr. Tonski then diagnosed the plaintiff with a contusion of the jaw, and he discharged the plaintiff with instructions that she should follow up with her family physician.

Four days later, on June 16, the plaintiff went to the emergency room of a different hospital. The plaintiff indicated that she could not eat or talk right and that her jaw was out of alignment. The plaintiff was referred by the emergency room personnel to an oral and maxillofacial surgeon, Dr. Wayne Triplett.

Dr. Triplett examined the plaintiff and diagnosed her with a fractured jaw, and found inflammation and infection at the fracture site. Dr. Triplett removed two permanent teeth because of the infection, and performed other surgical procedures to repair the fracture. The plaintiff alleges she continues to have numbness at the fracture site, and in her lip and chin.

The plaintiff subsequently filed this action against Dr. Tonski and Dr. Burton on May 7, 1996, alleging their treatment of her was negligent.[3]

On June 7, 1996, the circuit court entered a scheduling order requiring, *inter alia:*

> That all discovery shall be completed, including disclosure of factual and expert witnesses and all necessary depositions thereof, on or before May 7, 1997.[4]

In response to interrogatories from the defendants, on April 30, 1997 the plaintiff identified Dr. Triplett as one of her expert witnesses. On May 5, 1997, the defendants took the deposition of Dr. Triplett. The plaintiff identified three other expert witnesses on May 7, 1997, each of whom was expected to testify that the defendants were negligent,[5] and the defendants similarly disclosed their expert witnesses. No depositions were taken of these other experts.

Defendant Tonski filed a motion for summary judgment on May 8, 1997, stating that Dr. Triplett "did not possess a medical license" and "had never been employed as an emergency room doctor or a radiologist," but

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. The record indicates that the plaintiff's jaw had been broken two times previously.

3. The plaintiff also sued St. Mary's Hospital and Dr. Burton's radiology business, Radiology, Inc., under theories of vicarious liability.

4. The court's order could be considered somewhat confusing in that it set the same final date for disclosure of witnesses and for discovery and depositions to have been concluded.

5. The plaintiff's witness list identified four individuals who were "expected to testify that the failure to diagnose plaintiff's jaw fracture, and to implement appropriate medical and/or dental care in a prompt manner, fell below acceptable standards of care as to the Defendants, which directly and proximately resulted in damage and permanent injury to the plaintiff."

was instead a dentist and oral surgeon. The defendants argued that while Dr. Triplett was fully qualified to treat and diagnose traumatic injuries to the jaw, he was not qualified to be an expert witness in a lawsuit against a medical doctor. The defendants argued that Dr. Triplett was the *only* expert witness identified by the plaintiff,[6] and that because Dr. Triplett was not qualified to render an opinion that the defendants were negligent, no genuine issues of fact remained to be tried. Defendant Burton joined in the motion for summary judgment on May 12, 1997.

The plaintiff filed a response to the motion for summary judgment on May 21, 1997, and argued that Dr. Triplett was qualified to render an expert opinion in this case. The plaintiff further argued that three other expert witnesses had been identified who would testify that the defendants deviated from the standard of care; however, the plaintiff did not attach affidavits or other evidence of these experts' opinions to the response.

The trial court held a hearing on the defendants' motion for summary judgment on May 28, 1997. At the hearing, the plaintiff's attorney indicated she had just received a copy of Dr. Triplett's deposition the day before, and that a copy was being filed with the trial court. The attorney also indicated that another of the plaintiff's experts, Dr. Mark Shaw, was producing an affidavit which, because of the Memorial Day holiday, had been delayed in receipt. On June 2, the plaintiff filed Dr. Shaw's affidavit with the circuit court.[7]

On July 3, 1997, the circuit court entered its order granting summary judgment to the defendants. The circuit court concluded that Dr. Triplett, as a dentist, was not qualified "to render expert testimony that a medical doctor, whether emergency room physician or radiologist, deviated from the standard of medical care and that such conduct was the proximate cause of injury to the plaintiff." No consideration was given to Dr. Shaw's affidavit. The plaintiff now appeals this order.

II.

■ We are asked in this case to consider whether the circuit court erred in refusing to qualify Dr. Triplett as an expert. We have previously held that:

Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused.

Syllabus Point 5, *Overton v. Fields*, 145 W.Va. 797, 117 S.E.2d 598 (1960). *In accord*, Syllabus Point 3, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993); Syllabus Point 12, *Board of Education v. Zando, Martin & Milstead*, 182 W.Va. 597, 390 S.E.2d 796 (1990); Syllabus Point 4, *Hall v. Nello Teer Co.*, 157 W.Va. 582, 203 S.E.2d 145 (1974).

We are also asked to examine the appropriateness of summary judgment under

6. At the time the defendants filed their motions for summary judgment, they were apparently unaware that the plaintiff had disclosed three additional expert witnesses. The record indicates the plaintiff's attorney served the witness list on the defendants by first-class mail; the record is silent as to when the defendants received the list.

7. Dr. Shaw's affidavit indicated that he was a doctor of osteopathic medicine, and was board certified in emergency medicine. Dr. Shaw indicated that he had reviewed the plaintiff's medical records, that he was familiar with the standards of good medical practice for emergency room physicians and radiologists regarding jaw fractures, and stated that:

. . .

9. Based on my training, knowledge, experience, . . . it is my opinion that Dr. Tonski, as

the emergency room physician at St. Mary's Hospital failed to take any action to alleviate, remedy, diagnose, and/or treat Connie Dolen's fractured mandible. Furthermore, Dr. Tonski failed to properly refer Ms. Dolen to a physician who was capable of rendering appropriate care, diagnosis and/or treatment to her fractured mandible.

10. Based upon my training, knowledge, experience, . . . it is my opinion to a reasonable degree of medical probability that the care, diagnosis, and treatment rendered to Connie Dolen by Defendant Burton fell below the standards of good medical practice. Dr. Burton failed to correlate the clinical findings with the radiographic films and render the appropriate diagnosis.

*W.Va.R.C.P.* Rule 56 [1978].[8] As we stated in Syllabus Point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), we review a circuit court's entry of summary judgment *de novo.* The standard for granting summary judgment was established in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963) where we held:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord,* Syllabus Point 1, *Fayette Co. National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997); Syllabus Point 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995); Syllabus Point 2, *Painter, supra.*

■ When summary judgment has been granted as a result of the exclusion of expert testimony, we exercise a heightened degree of review. We stated in *Gentry v. Mangum,* 195 W.Va. 512, 519, 466 S.E.2d 171, 178 (1995) that "where the granting of summary judgment is dependent on the exclusion of expert testimony, as it is *sub judice,* our review must be more stringent."

With these standards in mind, we examine the circuit court's summary judgment order.

## III.

The primary issue presented by the plaintiff-appellant is whether Dr. Triplett was qualified under *West Virginia Rules of Evidence* Rule 702 to render expert testimony regarding the negligence of the defendants in this action.[9] As indicated previously, the circuit court excluded Dr. Triplett's testimony on the sole ground that Dr. Triplett was not licensed as a medical doctor, but rather, was only licensed as a dentist and oral surgeon.

■ The circuit court's decision was premised upon the defendants' argument below that the West Virginia Medical Professional Liability Act, *W.Va.Code,* 55–7B–7 [1986], sets the sole standard for the admissibility of expert testimony in a medical negligence action. *W.Va.Code,* 55–7B–7 [1986] states that expert testimony "may only be admitted in evidence if the foundation ... is first laid establishing that: ... (d) such expert maintains a current license to practice medicine in one of the states of the United States; and (e) such expert is engaged or qualified in the same or substantially similar medical field as the defendant health care provider."[10] The defendants argued below, and continue to argue on appeal, that because Dr. Triplett is neither licensed to practice medicine nor an expert in the fields of emergency medicine or radiology, Dr. Triplett lacks the qualifications necessary to render an opinion in this case.

We have previously addressed and rejected the argument posed by the defendants. In *Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 454 S.E.2d 87 (1994), we discussed a health care provider's argument that *W.Va.Code,* 55–7B–7 [1986] governs the qualifications of an expert in a medical mal-

---

8. We note that the *Rules of Civil Procedure* were substantially revised effective April 6, 1998. No changes were made affecting this appeal.

9. The plaintiff also argues that the lack of care by the defendants was so gross as to be apparent, and that expert testimony is unnecessary because the case relates to non-complex matters within the common knowledge of lay jurors, *citing* Syllabus Point 4, *Totten v. Adongay,* 175 W.Va. 634, 337 S.E.2d 2 (1985). The plaintiff also challenges the circuit court's finding that Dr. Triplett was the only expert proffered by the plaintiff. We do not address these issues.

10. *W.Va.Code,* 55–7B–7 [1986] states:

> The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court. Such expert testimony may only be admitted in evidence if the foundation, therefor, is first laid establishing that: (a) The opinion is actually held by the expert witness; (b) the opinion can be testified to with reasonable medical probability; (c) such expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is addressed; (d) such expert maintains a current license to practice medicine in one of the states of the United States; and (e) such expert is engaged or qualified in the same or substantially similar medical field as the defendant health care provider.

practice case. While this Court had earlier stated in *Gilman v. Choi,* 185 W.Va. 177, 406 S.E.2d 200 (1990) that pursuant to *W.Va. R.Evid.* 601, the legislature could enact statutes such as *W.Va.Code,* 55–7B–7 [1986] governing the competency of witnesses, in *Mayhorn* the Court concluded that under *W.Va. R.Evid.* 702 the legislature could not "outline when a witness should be found to be qualified as an expert." [11] 193 W.Va. at 49, 454 S.E.2d at 94.

We stated in Syllabus Point 6 of *Mayhorn* that:

> Rule 702 of the West Virginia Rules of Evidence is the paramount authority for determining whether or not an expert is qualified to give an opinion. Therefore, to the extent that *Gilman v. Choi,* 185 W.Va. 177, 406 S.E.2d 200 (1990) indicates that the legislature may by statute determine when an expert is qualified to state an opinion, it is overruled.

We therefore must look to Rule 702, and not *W.Va.Code,* 55–7B–7 [1986], to determine whether Dr. Triplett was qualified to give an opinion.

■ *West Virginia Rules of Evidence* Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

"Rule 702 has three major requirements: (1) the witness must be an expert; (2) the expert must testify to scientific, technical or specialized knowledge; and (3) the expert testimony must assist the trier of fact." *Gentry v. Mangum,* 195 W.Va. at 524, 466 S.E.2d at 183.

■ This case focuses on the first requirement of Rule 702—that the proffered witness be an expert "by knowledge, skill, experience, training, or education." This re-

quirement has been liberally construed by this Court. We stated in *Gentry v. Mangum* that in determining who qualifies as an expert, a trial court should conduct a two-step inquiry. "First, a circuit judge must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, the circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify. There must be a match." 195 W.Va. at 525, 466 S.E.2d at 184. *See also,* Syllabus Point 5 of *Gentry.* We cautioned in *Gentry v. Mangum* "that there is no 'best expert' rule. Because of the 'liberal thrust' of the rules pertaining to experts, circuit courts should err on the side of admissibility." *Id.*

■ When this standard is applied to the case at hand, it is clear that the circuit court abused its discretion in refusing to qualify Dr. Triplett as an expert. The record reveals that Dr. Triplett received a degree in dental surgery, a master's degree in biological science with a concentration in oral surgery from the Mayo Graduate School of Medicine, and had practiced since at least 1984 in the fields of oral and maxillofacial surgery. Dr. Triplett had been granted privileges to perform oral surgery at defendant St. Mary's Hospital. Dr. Triplett testified in his deposition that he held himself out as an expert in the management of trauma to the jaw, that he had diagnosed over 600 broken jaws by panorex radiograph, and that the management of fractures in the jaw region were within the scope of his practice at St. Mary's hospital. Furthermore, Dr. Triplett testified that he had reviewed more than 30,000 panorex radiographs since leaving the Mayo Clinic.

Applying the test set forth in *Gentry,* it is apparent that first, Dr. Triplett (a) had substantial educational and experiential qualifi-

---

11. In *Mayhorn* we rejected a hospital's argument that a doctor, who was board certified in internal medicine and was a professor of cardiology, was not qualified to render an opinion concerning the actions of an emergency room physician who treated a patient suffering a heart attack. In doing so, we examined *W.Va.Code,* 55–7B–7(e) [1986]. We see no reason why our reasoning in *Mayhorn* should not be equally applicable to challenges to an expert's qualifications as set forth in *W.Va.Code,* 55–7B–7(d) [1986].

cations relating to jaw fractures; (b) that his field of expertise is relevant to the diagnosis by panorex radiograph and the treatment of fractures to the jaw; and (c) this expertise will assist the trier of fact. Second, this expertise relates to the expected testimony by Dr. Triplett: that the defendants were negligent in their diagnosis and treatment of the plaintiff's broken jaw.

We therefore conclude that the circuit court abused its discretion in refusing to qualify Dr. Triplett as an expert. Furthermore, while the circuit court did not address the substance of Dr. Triplett's testimony, our review of Dr. Triplett's deposition indicates that material questions of fact exist concerning whether the defendants were negligent in their diagnosis and treatment of the plaintiff. We therefore reverse the circuit court's summary judgment order.[12]

### IV.

The circuit court's July 3, 1997 order is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MAYNARD, Justice, dissenting:

(Filed July 17, 1998)

I dissent because I disagree with both the majority's legal analysis and the decision reached in this case. Also, I have very strong concerns about the probable ramifications of this decision in all medical malpractice cases. In short, I believe the circuit court did not err in excluding the testimony of Dr. Triplett because, according to our rules, Dr. Triplett's testimony would not meet the standards for competency stated in W.Va.Code § 55–7B–7.

The majority apparently believes that in order to qualify as an expert witness in a medical malpractice case, a person's testimony need only meet the relevancy requirement of West Virginia Rule of Evidence 702. The majority bases its refusal to consider the requirements of W.Va.Code § 55–7B–7, dealing with the competency of witnesses in medical malpractice cases, on Syllabus Point 6 of *Mayhorn v. Logan Medical Foundation*, 193 W.Va. 42, 454 S.E.2d 87 (1994). If the majority's reading of *Mayhorn* is correct, I must also disagree with *Mayhorn*.

"For evidence to be admissible it must satisfy the three requirements of authenticity, relevancy, and competency." 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 6–1(A) (3rd ed. 1994) at 604. Rule 601 of the West Virginia Rules of Evidence concerns the *competency* of witnesses while " 'Rule 702 of the *West Virginia Rules of Evidence* ... is concerned primarily with the *relevancy* of expert testimony.' " *Wilt v. Buracker*, 191 W.Va. 39, 46 n. 12, 443 S.E.2d 196, 203 n. 12 (1993), *cert. denied*, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867

---

12. We decline to address the plaintiff's argument that the circuit court erred in failing to consider the affidavit of Dr. Shaw in its summary judgment order. The record reveals that, at the hearing on the motion for summary judgment, the plaintiff's attorney informed the circuit court the affidavit was being produced and sent to the attorney's office. The circuit court engaged in a heated debate at the summary judgment hearing with the plaintiff's attorney concerning the plaintiff's allegedly dilatory conduct in revealing the existence of Dr. Shaw and the other experts to the defendants. The circuit court, without mentioning the affidavit, orally indicated its intention to enter summary judgment for the defendants and ordered defense counsel to prepare the order.

The defendants contend that because the affidavit was not filed with the circuit court until after the summary judgment hearing (but still one month before the entry of the summary judgment order), the affidavit properly was not considered by the circuit court. We do not con-

sider these arguments because we find other grounds upon which we reverse the circuit court's summary judgment order.

We stated in Syllabus Point 3 of *Williams v. Precision Coil*, 194 W.Va. 52, 459 S.E.2d 329 (1995) that if a moving party makes a properly supported motion for summary judgment and can show that there is no genuine issue of material fact, the burden of production shifts to the nonmoving party to "produce additional evidence showing the existence of a genuine issue for trial." In this case, the plaintiff did produce "additional evidence" through the affidavit of Dr. Shaw. We acknowledge the defendants' argument that the plaintiff's attorney may have been dilatory in producing Dr. Shaw's affidavit. However, if this was so, we believe that rather than ignoring the affidavit, the proper approach by the circuit court would have been to consider whether the affidavit created a material question of fact, and to address the attorney's conduct by means other than awarding summary judgment.

(1994), *quoting Gilman v. Choi*, 185 W.Va. 177, 179, 406 S.E.2d 200, 202 (1990), *overruled on other grounds, Mayhorn v. Logan Medical Foundation*, 193 W.Va. 42, 454 S.E.2d 87 (1994). Because Dr. Triplett appears to have specialized knowledge that would assist the trier of fact in understanding the evidence or determining a fact in issue, I agree with the majority that Dr. Triplett's testimony is *relevant*. However, we must not end our inquiry into whether Dr. Triplett is qualified to testify at this point. Next, we must determine whether Dr. Triplett is *competent* to testify as a witness in this case.

Rule 601 states, "Every person is competent to be a witness **except as otherwise provided for by statute or these rules.**" (Emphasis added.) By specifically providing an exception in this rule for statutory provisions, the Court has elected to defer to the Legislature when the Legislature enacts statutes on the competency of witnesses. W.Va.Code § 55–7B–7 is concerned primarily with the *competency* of expert testimony in a medical malpractice action. *See Gilman, supra*. Therefore, W.Va.Code § 55–7B–7 operates as an exception to the Rules of Evidence concerning the competency of witnesses. W.Va.Code § 55–7B–7 (1986) provides,

> The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court. Such expert testimony may only be admitted in evidence if the foundation, therefor, is first laid establishing that: (a) The opinion is actually held by the expert witness; (b) the opinion can be testified to with reasonable medical probability; (c) such expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is addressed; (d) such expert maintains a current license to practice medicine in one of the states of the United States; and (e) such expert is engaged or qualified in the same or substantially similar medical field as the defendant health care provider.

Analyzing the proposed testimony of Dr. Triplett under this standard, it is obvious that it falls short on three counts.

First, W.Va.Code § 55–7B–7 is mainly concerned with the applicable **standard of care**. Obviously, therefore, an expert witness's competency is partly determined by his or her knowledge of the standard of care governing a specific field, situation, procedure, or area of knowledge. The number of x-ray films Dr. Triplett has read is simply not helpful on this point. Dr. Triplett, an oral surgeon, does not possess the requisite knowledge of the applicable standard of care governing the conduct of Dr. Tonski, an ER physician. Second, it is undisputed that Dr. Triplett does not maintain a current license to practice medicine in one of the states of the United States. Third, Dr. Triplett has never been employed as an emergency room doctor or radiologist. We must conclude, therefore, that Dr. Triplett does not qualify as a *competent* witness in this medical malpractice case under W.Va.Code § 55–7B–7.

By adopting Rule 601, which specifically allows exceptions provided for by statute to the Rules of Evidence on competency, this Court has granted the Legislature the power to draft statutes like W.Va.Code § 55–7B–7. By crafting Syllabus Point 6 of *Mayhorn*, however, this Court has removed that power. This is unfortunate because W.Va.Code § 55–7B–7 makes good sense. The majority's rule, on the other hand, makes very little sense. By mandating that expert testimony in medical malpractice cases meet only the *relevancy* requirements of Rule 702 and not the *competency* requirements of W.Va.Code § 55–7B–7, this Court ignores the plain language of Rule 601; neglects the logic of the competency standards provided by the Legislature; and creates a situation where any Tom, Dick or Harry who reads the latest edition of the *New England Journal of Medicine* can testify as an expert witness in a medical malpractice case.

Where are we headed now? Will we allow registered nurses to give expert testimony against physicians? Because they have more knowledge than the general public about medical matters, they qualify as an expert

witness under the majority opinion. Can a chiropractor now testify against an orthopedic surgeon? Chiropractors have greater knowledge and would apparently qualify as expert witnesses. What about podiatrists? What about emergency medical technicians? What about allowing midwives, who are licensed in West Virginia, to testify against obstetricians? Under the rules articulated by the majority, all of these "experts" are now competent witnesses and could give relevant evidence in medical malpractice cases. How about acupuncturists or, for that matter, embalmers? I could go on forever, but I have made my point.

The majority's holding greatly diminishes the standards of admissibility governing expert testimony. In the instant case, the result may not be that bad. Dentists are high level professionals, and it appears that Dr. Triplett is experienced and skillful. The problem, however, as noted above, is that the bar is now lowered for everyone. I believe the majority opinion makes bad law and produces a bad result. Therefore, I respectfully dissent. I am authorized to state that Justice McCuskey joins in this dissenting opinion.